IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLOW TRADERS U.S. LLC,<br><br>                    Plaintiff,<br><br>      -against-<br><br>AFNC, LLC,<br><br>                    Defendant. | Civil Action No.: 1:20-cv-10652<br><br>**COMPLAINT** |

Plaintiff Flow Traders U.S. LLC ("Flow Traders"), by and through its attorneys, Porzio, Bromberg & Newman, P.C., hereby sets forth the following as and for its Complaint against Defendant AFNC, LLC ("AFNC"):

**I.  NATURE OF THE ACTION**

1. This is a diversity action brought pursuant to 28. U.S.C. § 1332. Plaintiff Flow Traders is a proprietary trading firm headquartered in Midtown Manhattan. It is a market maker whose operations were deemed essential by the State of New York to the regular and orderly operations of this Country's financial marketplaces.

2. Defendant AFNC is a real estate holding company located in Naples, Florida. In March 2020, Flow Traders rented a large residential premises from AFNC (the "Property") under written leases (the "Leases") to set up a live-in office space where a portion of its employees could establish a quarantined workforce to ensure that it could continue to operate during the COVID-19 pandemic.

3. The Property was a large mansion that used to belong to boxer Mike Tyson and musical artist Curtis "50 Cent" Jackson. AFNC purchased it in 2019 for approximately $2.9 million, after Mr. Jackson listed it for an $18.5 million asking price.

4. Nobody from AFNC ever lived at the Property, and upon information and belief, it was purchased solely as an investment vehicle with the goal of a profitable resale.

5. Flow Traders transferred a $65,000 security deposit (the "Security Deposit") to AFNC before taking possession to guard against damages past normal wear and tear.

6. After Flow Traders' tenancy ended, AFNC advised that it would be retaining the entire Security Deposit and would be making a claim against Flow Traders in excess of $75,000 due to damage at the Property. No documentation was provided to substantiate AFNC's position.

7. Flow Traders then attempted to work through the dispute amicably. While it denies damaging the Property, Flow Traders invited AFNC to send proof of the claimed damages and estimates substantiating AFNC's alleged entitlement to retain the Security Deposit and collect further amounts. AFNC responded by producing photographs secretly taken by its agent during the early phases of Flow Traders' tenancy. AFNC disingenuously offered these photographs to demonstrate that Flow Traders left the Property in bad condition, even though the photographs were taken in secret, months before Flow Traders vacated the Property. Moreover, Flow Traders had a professional service recommended by AFNC clean the Property for over 30 hours per week and the Property was left in good condition.

8. Accordingly, Flow Traders has no choice but to bring this action.

**II.      PARTIES**

9. Flow Traders is a limited liability company organized under the laws of Delaware. None of its members are residents of Florida. Its principal place of business is located at 1114 6th Avenue, New York, NY 10036.

10. AFNC is a limited liability company, which upon information and belief, is organized under the laws of Florida. Its principal place of business is located at 848 1st Avenue North, Suite 300, Naples, FL 34102. All of its members reside in Florida.

### III. JURISDICTION AND VENUE

11. This Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332, based upon the parties' diversity of citizenship and the fact that the amount in controversy, exclusive of interest and costs, exceeds $75,000.

12. Venue is proper under 28 U.S.C. § 1391 (c) as AFNC is subject to personal jurisdiction in New York regarding this action.

### IV. FACTUAL STATEMENT

#### A. Flow Traders Rents the Property form AFNC

13. As noted, Flow Traders is a proprietary trading firm and a market maker.

14. In March 2020, Flow Traders was designated an essential business during the lockdown imposed by Governor Andrew M. Cuomo as its ongoing operations were deemed vital to the continued healthy function of the United States' financial system.

15. Flow Traders' business model depends largely on the ability for its traders and support staff to work face to face from a single physical location.

16. In March 2020, Flow Traders recognized that it needed to create an offsite physical satellite office where it could send its employees under quarantine to continue operating in the event of a COVID-19 outbreak in its Manhattan location.

17. Flow Traders identified the Property, which is located at 50 Poplar Drive, Farmington, CT, as a potential suitable location for such purposes.

18.     After some negotiations, Flow Traders and AFNC entered into the first of the Leases on March 6, 2020 (the "Initial Lease"). The Initial Lease had a term of March 6 2020 to June 6, 2020. Flow Traders had to pay monthly rent of $75,000 and give AFNC a Security Deposit for $75,000. The Initial Lease stated that AFNC could only use the Security Deposit to "pay the rent or any other money [Flow Traders] owes under the [Initial Lease]." AFNC had to return the Security Deposit to Flow Traders after it "fulfill[ed] all of [its] agreements under the [Initial Lease]." Flow Traders was ready willing and able to transfer the full $75,000, but AFNC later modified the Initial Lease and requested that Flow Traders transfer only $50,000 for the Security Deposit. Flow Traders transferred that sum to AFNC.

19.     Flow Traders took possession of the Property in March 2020 and had no dealings with AFNC for months. In April, 2020, with the COVID-19 pandemic raging on, Flow Traders approached AFNC about extending the term of the Initial Lease or entering into a new lease that would extend from June to September 2020.

20.     The parties negotiated a new lease (the "Second Lease") that allowed Flow Traders to remain at the Property through September 7, 2020 in exchange for $100,000. The Second Lease also required that Flow Traders transfer an additional $15,000 for the Security Deposit. At no time, however, did AFNC take any issue with Flow Traders use or the condition of the Property before signing the Second Lease. Flow Traders transferred the additional $15,000 Security Deposit around the time the parties executed the Second Lease.[1]

21.     Flow Traders paid all sums due under the Leases and otherwise complied with the terms of the same. It vacated the Property before the September 7, 2020 expiration date set by the Second Lease.

---

[1] Copies of the Leases are collectively annexed hereto as **Exhibit A**.

22. Flow Traders did not hear from AFNC again until it received a letter from AFNC's purported Chief Legal Officer on October 5, 2020 (the "Locker Letter").[2] The Locker Letter alleged that Flow Traders had damaged the Property in an amount exceeding at least $70,000 and that AFNC would be making a claim for further amounts as its representatives continued to examine the Property. The Locker Letter also attached an excel spreadsheet, which it appears AFNC created, that purports to list the items of claimed damages and assigns a dollar value to those claims.

23. Yet, the spreadsheet contained no proof that the damages occurred, such as photographs. It also affixed no estimates or other documentation to support these claimed amounts. (Ex B, p. 2-4). Moreover, many of the claims were nonsensical. For example, AFNC claims it is owed $1,100 because the basketball court at the Property had black scuff marks on it. (Ex. B., p. 3). Yet, the basketball court itself is entirely black and could not have black marks on the same.

24. Other claims were made for damages that predated Flow Traders' tenancy. For example, AFNC claims that Flow Traders inflicted $1,450 in damages to an elevator inside of the Property. Yet, Flow Traders barely used the elevator and certainly did not do so in a manner that would have damaged the same. Similarly, AFNC claimed Flow Traders inflicted $16,000 in damages to various surfaces and furniture. Yet, all of these damages, to the extent they existed, were present when Flow Traders took possession of the Property.

25. It appears that AFNC is using the feigned damage claims to have Flow Traders foot the bill for a renovation project that AFNC deems necessary to get the Property into shape for a profitable resale. Yet that is not allowed under the law.

---

[2] A copy of the Locker Letter is annexed hereto as **Exhibit B**.

26. Flow Traders has made numerous efforts to resolve this matter without resort to the Courts. On October 30, 2020, Flow Traders' counsel sent AFNC correspondence outlining Flow Traders position on the matter and inviting AFNC to submit proof substantiating its damages and documentation to support the dollar amounts AFNC assigned to the same.[3]

27. AFNC remained silent until it sent Flow Traders' counsel an e-mail on November 16, 2020, in which it committed to provide Flow Traders evidence to substantiate its claims by November 30, 2020.[4] Flow Traders responded by agreeing to wait until November 30, 2020 to review AFNC's submissions. (Ex. D).

28. AFNC then provided a collection of photographs taken by its property manager, Marc Pompei. AFNC offered these photographs in an effort to show that Flow Traders left the Property in a messy condition after it vacated. Yet, all of the photographs were taken during the early phases of Flow Traders' tenancy and do not reflect the state of the Property when Flow Traders vacated the same. AFNC is aware of this since it knows that Flow Traders hired a professional cleaning company to clean the Premises for at least 30 hours a week. This professional cleaning service was arranged for by Marc Pompei of AFNC.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Declaratory Judgment Against AFNC)**

29. Flow Traders repeats and realleges each and every allegation set forth above as if fully set forth herein.

---

[3] A copy of this correspondence, dated October 30, 2020, is annexed hereto as **Exhibit C.**

[4] A copy of that e-mail correspondence, dated November 16, 2020, along with Flow Traders' response thereto, are collectively annexed hereto as **Exhibit D**.

30. AFNC has claimed that it may retain Flow Traders' Security Deposit and seeks further sums in excess of $75,000. Flow Traders disputes the same and denies that it damaged the Property or committed any other act which would entitle AFNC to retain the Security Deposit and/or seek further sums from Flow Traders.

31. Accordingly, an actual and justiciable controversy has arisen and exists as to the rights of the parties.

32. A declaratory judgment is thus necessary to determine the rights of the parties, and specifically whether: a) AFNC is entitled to retain Flow Traders' Security Deposit; and b) AFNC may seek to recoup any other sum from Flow Traders under the Leases.

33. There is no adequate remedy at law other than the relief sought herein.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Breach of Contract Against AFNC)**

34. Flow Traders repeats and realleges each and every allegation set forth above as if fully set forth herein.

35. The Leases constitute binding and valid written contracts under which AFNC must return the entire Security Deposit to Flow Traders if Flow Traders does not default in its obligations under the Leases.

36. Flow Traders did not default in the performance of any obligations under the Leases and did not damage the Property beyond normal wear and tear.

37. AFNC has accordingly breached the Leases by failing to return the Security Deposit and by threatening to take action against Flow Traders to collect further sums exceeding $75,000.

38. Flow Traders has been damaged in an amount to be determined at trial, but believed to be in excess of $75,000, as a proximate cause of AFNC's breach of the Leases.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Breach of the Implied Warranty of Good Faith and Fair Dealing)**

39. Flow Traders repeats and realleges each and every allegation set forth above as if fully set forth herein.

40. The Leases contained an implied covenant of good faith and fair dealing.

41. AFNC has breached the implied covenant of good faith and fair dealing by, amongst other things, falsely manufacturing claims of damages to the Property and affixing arbitrary and made up dollar values to those spurious damages claims.

42. AFNC's breach of the implied covenant of good faith and fair dealing caused substantial damage to Flow Traders in an exact amount to be determined at trial, but believed to be in excess of $75,000.

**WHEREFORE**, Plaintiff Flow Traders demands judgment against Defendant AFNC as follows:

    (A)    on the First Cause of Action, issuing a judicial declaration and order directing that AFNC must return the entire Security Deposit and barring AFNC from seeking further amounts from Flow Traders under the Leases;.

    (B)    on the Second Cause of Action, awarding Flow Traders monetary damages in an amount to be determined at trial, but not less than $75,000;

    (C)    on the Third Cause of Action, awarding Flow Traders monetary damages in an amount to be determined at trial but not less than $75,000;

    (D)    awarding Flow Traders all pre-judgment interest, costs and attorneys' fees; and

    (E)    awarding Flow Traders such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 17, 2020

                                      **PORZIO, BROMBERG & NEWMAN, P.C.**

                                      By:   s/Russell L. Porter
                                            Russell L. Porter (RP4945)
                                    156 West 56th Street, Suite 803
                                    New York, New York  10019-3800
                                    Tel: 212-265-6888
                                    Email: rlporter@pbnalw.com
                                    *Attorneys for Plaintiff Flow Traders U.S. LLC*